**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ROBERT C. LONG, SR. &              :
JANET V. LONG,                     :
                                   :
          Plaintiffs,              :          CIVIL ACTION
                                   :
     v.                            :
                                   :
BRISTOL TOWNSHIP, *et al.*,        :          NO.   10-1069
                                   :
                                   :
          Defendants.              :

**MEMORANDUM**

BUCKWALTER, S. J.                                        July 11, 2012

      Presently before the Court is the Motion for Summary Judgment of Defendants Bristol

Township, the Zoning Hearing Board of Bristol Township, Glenn M. Kucher, Wendy Margulies, Al

Burgess, Ronald Marczak, Peggy Horvath, Joseph Champey, John Gushue, Tina Davis, John

Monahan, and Linda Tarlini[1]  (collectively hereinafter "Defendants," "the Township," or "Bristol

Township").  For the following reasons, the Motion is granted in part and denied in part.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      This matter involves a dispute over a parcel of land located in Bristol Township,

Pennsylvania.  The land is owned by Plaintiffs Robert C. Long, Sr. and Janet V. Long ("Plaintiffs"

or "the Longs").  The individually named defendants are or formerly were officers of Bristol

Township.

---

[1] George and Susan Rosenberg were originally also listed as defendants in this action. On
May 10, 2012, however, the parties stipulated to the dismissal of the Rosenbergs as defendants.
(See Docket No. 58.)

Under Bristol Township's land use laws and regulations, all land developers are required to formulate a "land development plan" describing their project, which subsequently must be filed with the Bristol Township Council for review and approval. (Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Summ. J. Mem."), Ex. P, Stipulation of the Longs and Bristol Township ("Stipulation") ¶ 30.) Upon approval of the plan, the developer may begin to develop his property. (Id.) Should a developer's plan require him to obtain a variance from a local ordinance, however, this entails a different procedure. (Id. ¶ 25.) In such a situation, the developer is first required to submit an application to the Bristol Township Zoning Hearing Board ("ZHB" or "the Board") for a variance. (Id.) After receiving preliminary approval for a variance, the developer thereafter has six months to obtain either a building permit or occupancy certificate. See Bristol Twp. Z.O. § 2506(e).[2] Failure to adhere to this requirement results in the expiration of the developer's variance grant, at which point he must apply for either a renewed variance or request an extension. A developer's land development plan cannot be approved by the Township Council absent a valid variance.

On January 28, 2005, the Longs filed an application with the Bristol Township Zoning Hearing Board ("ZHB") requesting a use and dimensional variance for a parcel of their land. (Pls.' Answer to Defs.' Mot. Summ. J. ("Pls.' Answer"), Ex. A, Dep. of Robert Long ("Robert Dep."), 26:24, 27:1–4.) Specifically, Plaintiffs sought to construct a "mini-storage warehouse" on the property. (Id. at 28:3, 6–9.) To assist them in this process, the Longs retained the services of Pennsylvania attorney John Koopman, Esq., and land use planning engineer Joseph Mixner. (Id. at

_____

[2] Bristol Township Zoning Ordinance § 2506(e) states: "[U]nless otherwise specified by the Zoning Hearing Board, a variance shall expire if the applicant fails to obtain a building permit or occupancy certificate, as the case may be, within six months from the date of authorization thereof." Bristol Twp. Z.O. § 2506(e).

34:12–24, 35, 36, 37:1–6.)

On March 14, 2005, the ZHB held a public hearing on the Longs' application, and unanimously granted their request for a variance. (Defs.' Summ. J. Mem., Ex. B, 04/12/05 Zoning Hr'g Bd. Decision ("ZHB Decision") at 1.) The ZHB subsequently documented its grant of the variance in a formal written Decision on April 12, 2005, which explicitly stated that local regulations required the Longs to obtain either a building permit or occupancy certificate within six months or else their variance would expire. (ZHB Decision at 5.) The Longs did not obtain either document within the requisite six months. Plaintiff Robert Long claims that he was not made aware of this six-month expiration period. (Robert Dep. 46:13–24.) Robert further testified that, upon receiving a letter from the Township which stated that the variance had expired, Koopman advised him not to concern himself with the matter. (Id. at 62:5–24.)

Although they did not obtain either of the requisite documents, the Longs allege that they nonetheless incurred expenses associated with the development of their land during this time. (Id. at 63:23–24, 64:1–24.) Specifically, they assert that they were paying Koopman to oversee the land development plan, and that Mixner billed them for engineering work he completed on the property. (Id. at 64:14–24, 65, 66.) Invoices from Mixner's consulting company and Koopman's law firm indicate that the Longs were billed for approximately $150 in engineering fees and $1,860 in legal fees during this time. (Defs.' Summ. J. Mem., Ex. F, 06/16/09 J.H. Mixner Consultants, Inc. Billing Invoice ("Mixner Invoice"); Ex. G, 03/31/05 Begley, Carlin & Mandio LLP Billing Statement ("Koopman Bill").)

In January of 2006, the Longs filed their land development plan—nine months after their variance had been granted and three months after it had expired. (Robert Dep. 81:19–24.) The plan

was originally set to be voted on by the Bristol Township Council on March 16, 2006.  (Defs.'
Summ. J. Mem., Ex. I, 03/01/06 Bristol Township Letter ("03/01/06 Letter").)  However, Defendant
Glenn M. Kucher ("Kucher"), a Bristol Township zoning officer, discovered that the variance had
expired.  He therefore sent the Longs a letter informing them that they needed to re-apply for a
variance before their land development plan could be considered by the Council.  (Defs.' Summ. J.
Mem., Ex. D, Dep. of Glenn Kucher ("Kucher Dep.") 87–88; Ex.K 04/27/06 Letter from Glenn
Kucher to Robert Long ("Kucher Letter").)  Another six months passed before Plaintiffs actually
filed a request for an extension of their variance on October 31, 2006.  (Defs.' Summ. J. Mem., Ex.
A, Compl. of Robert and Janet Long ("Court of Common Pleas Compl.") ¶ 28; Ex. L, 01/25/07
Findings of Fact &Conclusions of Law in Support of the Decision of the Bristol Twp. Zoning Hr'g
Bd. ("ZHB Decision") at 2.)  A hearing before the ZHB on the extension request was scheduled for
December 11, 2006. (ZHB Decision at 2; Defs.' Summ. J. Mem., Ex. M, Bristol Twp. Zoning Mtg.
("12/11/06 ZHB Mtg.").)

In the time between the original grant of Plaintiffs' variance and the December 2006 hearing,
however, significant changes occurred in Bristol Township.  (Kucher Dep. 43:12–24, 44:1–24,
45:1–20; ZHB Decision at 3.)  Specifically, several Township councils and associations worked
together to complete the "Bristol Township Beautification Project," a community plan aimed at
commercially revitalizing the local area, including the area buttressing the Longs' property. (Kucher
Dep. 43:21–24.)  In accordance with the Project, the local train station was re-done and the main
local traffic route, Route 13, was re-designed into a pedestrian-friendly business corridor. (Id. at
43:22–24, 44:1–10.)  The area was also eventually re-zoned for "mixed use."  (Id. at 44:19–21.)

At the December 2006 hearing, the Longs were denied an extension of their variance.  (Id.

4

at 60:7–21; Robert Dep. 104:23–24, 105:1–7; 12/11/06 ZHB Mtg. at 38–42.)  The ZHB issued a

formal written Decision on January 25, 2007, in which it cited the Beautification Project as one

reason for its denial of the variance renewal.  (ZHB Decision at 3.)  The Board also denied the

extension based on the fact that Plaintiffs waited several months before requesting the extension,

which implied to the Board that they had no real interest in developing their property.  (Defs.'

Summ. J. Mem., Ex. N, Dep. of Ronald Marczak ("Marczak Dep.") 17:13–19, 21:3–5.)  As a result

of the ZHB's denial of their variance, the Longs were therefore unable to move forward with their

land development plan.  (See Defs.' Summ. J. Mot., Ex. K, 04/27/06 Letter to Robert C. Long Re:

2019 Bristol Pike, Croydon, Tax Parcel #5-12-100 ("04/27/06 Letter").)

      Plaintiffs appealed the ZHB's decision to the Court of Common Pleas of Bucks County.

During discovery it was revealed that, since the time the six-month expiration requirement became

effective, nine out of the twelve land development projects in Bristol Township had not obtained

building permits or occupancy certificates within the requisite timeframe but were nonetheless

permitted to move forward. (Stipulation ¶ 33.) Evidence unveiled during discovery further revealed

that the six-month expiration period was not routinely enforced in Bristol Township, and that the

ZHB regularly granted renewed variances and extensions for land development projects.  (Id. ¶¶

2–29.) It was also revealed that the Longs' neighbors, George and Susan Rosenberg, owned property

in violation of an existing ordinance, but were not required to obtain a variance.  (Robert Dep. 117.)

      Based on this evidence, the Court of Common Pleas reversed the ZHB Decision, and held

that the Longs could move forward with their property development.  (Defs.' Summ. J. Mem., Ex.

Q, Opinion & Order of the Court of Common Pleas ("Common Pleas Op.").)  The Court of Common

Pleas also found that: "[g]iven the fact that no other applicants ha[d] been treated this way[,] it [was]

difficult to deny the existence of bad faith" on the Township's part. (Common Pleas Op. at 7.)  After the Court of Common Pleas' reversal, the Township Council ultimately approved the Longs' land development plan, thereby permitting Plaintiffs to formally begin the development of their property. (Robert Dep. 107:19–22.)  To date, however, the Longs still have not started construction of the warehouse on the property. (Id. at 109–112.)

Plaintiffs filed their Complaint in federal court on March 11, 2010, asserting several constitutional violations pursuant to 42 U.S.C. § 1983: (1) violations of their procedural and substantive due process rights (Count I); (2) violations of their equal protection rights (Count II); (3) a taking of their property (Count III); and (4) a conspiracy to deprive them of their constitutional rights (Counts IV).[3]  Defendants filed the instant Motion for Summary Judgment on April 9, 2012.[4]  Plaintiffs responded in opposition on May 4, 2012, making this matter ripe for judicial consideration.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide

---

[3] In their Response in Opposition, Plaintiffs withdraw their conspiracy claims set forth in their Complaint.  (See Pls.' Resp. Opp'n 19.)  As such, summary judgment on this point is denied as moot.

[4] Neither a motion to dismiss, nor any other preliminary motion, was filed in this case.

which is more probative, or to make credibility determinations.  Boyle v. Cnty of Allegheny, Pa., 139

F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc., 998

F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable

inferences which may be drawn from it, in the light most favorable to the non-moving party.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States

v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361

(3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must

accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn

in his favor."  Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue

of material fact, it need not "support its motion with affidavits or other similar materials negating

the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden

by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."

Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than

simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec., 475 U.S.

at 586.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party

for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249.  Summary judgment may

be granted when "the evidence is merely colorable . . . or is not significantly probative."  Id. at 249–

50 (citations omitted).

## III.    DISCUSSION

Defendants move for summary judgment in their favor on Plaintiff's constitutional claims brought under § 1983, alleging that the Longs have failed to establish the existence of constitutional violations on their part.  Defendants likewise aver that Bristol Township cannot be held liable under a theory of municipal liability, and that the individually named Defendants are protected by the doctrine of qualified immunity.  The Court considers each argument and response in turn.

### A.    The Constitutional Claims

Plaintiffs assert their constitutional claims against the Township pursuant to 42 U.S.C. § 1983.  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  The statute itself does not independently create substantive rights, but rather merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004) (internal citation omitted); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002); Bush v. Lancaster City Bureau of Police, No. Civ.A.07-3172, 2008 WL 3930290, at *3 (E.D. Pa. Aug. 26, 2008).  Federal law requires a plaintiff to satisfy two steps in order to properly establish a § 1983 claim: (1) the deprivation of a constitutional right or other federal law; and (2) that a "person acting under the color of state law" is responsible for the alleged deprivation. Collins v. City of Harker Heights, 503 U.S. 115, 119–20 (1992).

8

In the instant case, Plaintiffs claim that Bristol Township engaged in conduct committed under the color of state law that deprived them of their due process and equal protection rights under the United States Constitution. (Compl. ¶¶ 43–56.) Plaintiffs further aver that the Township's conduct resulted in an unconstitutional taking of their property. (Id. ¶¶ 57–69.)

### 1.    Due Process (Count I)[5]

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. As interpreted by the Supreme Court, the Fourteenth Amendment protects both the substantive and procedural due process rights of individuals. See Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 846–47 (1992). In this case, the Longs assert that Bristol Township's conduct violated both types of due process. The Court considers each allegation in turn.

### a.    Procedural Due Process

"At the core of procedural due process jurisprudence is the right to advance notice of

---

[5] In their Complaint, Plaintiffs assert that Bristol Township violated their procedural due process rights under the Fifth Amendment, and their substantive due process rights under the Fourteenth Amendment. (Compl. ¶¶ 43–50.) It is well established law, however, that the Fifth Amendment only applies to actions taken by the federal government. See Nguyen v. U.S. Catholic Conf., 719 F.2d 52, 54 (3d Cir. 1983) (citing Pub. Util. Comm'n v. Pollak, 343 U.S. 451, 461 (1952)) (paranthetical omitted). Here, Bristol Township is a local government entity—not a part of the federal government system. As such, Defendants are entitled to summary judgment on all claims made by Plaintiffs based on Bristol Township's alleged violation of their Fifth Amendment due process rights. Moreover, although it appears from the face of the Complaint that Plaintiffs' procedural due process claims are solely based on the Fifth Amendment, it is possible for one to infer from the text of Plaintiffs' Complaint and Response in Opposition that they likewise meant to base their procedural due process claims on the Fourteenth Amendment. At this stage of the proceedings, the Court is required to draw all inferences in the non-moving parties' favor, which in this case are the Longs. As such, the Court will likewise consider Plaintiffs' procedural due process claims to the extent that the Longs intended them to be based on the Fourteenth Amendment.

9

significant deprivations of liberty or property and to a meaningful opportunity to be heard." Abbott

v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998) (internal citations omitted).  In order to successfully

establish a prima facie case of a procedural due process violation, a plaintiff must show: (1) there

has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the

government to remedy the deprivation were constitutionally inadequate.  See Mulholland v. Gov't

of Cnty. of Berks, No. Civ.A.10-5616, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29, 2012) (citing

Studli v. Child. & Youth & Fam. Ctr. Reg'l Office, 346 F. App'x 804, 813 (3d Cir. 2009)).

Remedial procedures will be found to be constitutionally inadequate if "they contain a defect so

serious [as to] characterize the procedures as fundamentally unfair."  See Leonard v. Owen J.

Roberts Sch. Dist., No. Civ.A.08-2016, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2009) (citing

Daniels v. Williams, 474 U.S. 327, 341 (1987) (Stevens, J., concurring)).  Put differently, if a

plaintiff avers a lack of adequate procedures to protect his constitutional interest at issue, then the

inquiry is whether the government in fact has an established procedure in place that would remedy

the infringement.  As such, the focus in procedural due process claims is on the adequacy of the

remedial procedure, and not on the government's actual actions that allegedly deprived the individual

of his liberty or property interest.  Leonard, 2009 WL 603160, at *4.

    Here, Plaintiffs allege that they were deprived of their property rights.  (Compl. ¶ 47.)

Specifically, Plaintiffs aver that "[t]he right of the Longs to develop the property consistently with

the existing ordinances of Bristol Township and in accordance with the variance approved for the

Property has been intentionally abridged by Defendants . . . with [the] intent to deprive" them of their

property.  (Id. ¶ 45.)  It is well established law that "possessory interests in property invoke

procedural due process protections."  Abbott, 164 F.3d at 146 (internal citation omitted).  As such,

Plaintiffs have satisfied the first element of the procedural due process analysis.

The second element requires the Court to consider if the procedures used to remedy the deprivation were constitutionally inadequate. A fellow court in this District previously addressed this issue in a factual scenario largely similar to the one at hand in Maple Properties, Inc. v. Township of Upper Providence, No. Civ.A.00-4838, 2004 WL 2579740 (E.D. Pa. Nov. 12, 2004). In Maple, the plaintiff purchased a tract of land upon which it sought to construct fast food and convenience stores. Id. at *1. The plaintiff applied for and was granted a special exception from the relevant zoning ordinance, and began engineering work on the property. Id. While the plaintiff was in the course of completing its land development plan, the township changed the zoning demarcation of the area, which effectively prohibited further construction on the plaintiff's land. Id. The plaintiff sued the township, asserting a deprivation of its procedural due process rights related to its property interest. Id. at *4. In declining to find a violation of procedural due process, the Maple Court relied on the Third Circuit's language in Rogin v. Bensalem Township, 616 F.2d 680 (3d Cir. 1980), which detailed the remedial procedures available to dissatisfied landowners in Pennsylvania:

> A [Pennsylvania] landowner who wishes to challenge the validity of a zoning ordinance or amendment that restricts the use or development of its land may file a challenge with the zoning hearing board and may appeal from any decision by the zoning officer applying the ordinance. . . . If the landowner is dissatisfied with the Board's decision, it then has the right to appeal to the Court of Common Pleas. The appeal may take the form of direct judicial review of the Board's decision, or the court may take new evidence and enter its own findings of fact after trial de novo. The Court is authorized to declare any ordinance or map invalid and to set aside or modify any action, decision, or order of the Township, Zoning Officer, or Zoning Hearing Board.

Maple, 2004 WL 2579740 at *4 (quoting Rogin, 616 F.2d at 694–95). Based on this language, the Maple Court found that: "[i]n a state such as Pennsylvania, which affords a full judicial mechanism

to challenge administrative decisions, the state provides adequate procedural due process regardless of whether the plaintiff avails herself of that appeal mechanism." <u>Maple</u>, 2004 WL 2579740 at *4 (internal citations omitted).

This Court finds <u>Maple</u> and <u>Rogin</u> particularly instructive here. After the Longs filed their land development plan, the Township informed them that their variance was expired, but gave them the opportunity to remedy this by filing an application for an extension. The Longs waited another six months before actually filing for the extension. Upon receipt of the application, the ZHB held a hearing on it, during which it took comments from the public and heard testimony from several individuals, including Plaintiffs' attorney. Nothing in the record indicates that Plaintiffs were in any way prevented from participating in and representing their interests at this hearing. Indeed, Robert Long acknowledges being present at the hearing. After the ZHB decided at the hearing that it would not grant the extension of the variance, it shortly thereafter issued a formal written Decision explaining its reasoning for doing so. Displeased with this result, Plaintiffs appealed the ZHB Decision to the Court of Common Pleas, where they were given the opportunity to conduct discovery and have another neutral body consider their claims anew. Based on this evidence of record, there can be no dispute that Plaintiffs took full advantage of the procedures available to them under Pennsylvania law to cure any constitutional violation that may have occurred here. As such, Defendants are entitled to summary judgment on Plaintiffs' procedural due process claims.

### b.    Substantive Due Process

The substantive component of the Due Process Clause bars certain arbitrary and wrongful government actions that would deprive an individual of life, liberty, or property. <u>Tazioly v. City of Phila.</u>, No. Civ.A.97-1219, 1998 WL 633747, at *7 (E.D. Pa. Sept. 10, 1998) (citing <u>Zinermon v.</u>

12

Burch, 494 U.S. 113, 125 (1990)).  The first step in assessing a substantive due process claim is to identify the constitutional interest that was allegedly aggrieved.  See Harris v. Lehigh Cnty. Office of Child. & Youth Servs., 418 F. Supp. 2d 643, 647 (E.D. Pa. 2005) (citing Williams v. Borough of W. Chester, 891 F.2d 458, 464 (3d Cir. 1989));  Wessie Corp. v. Sea Isle City Zoning Bd. of Adjustment, No. Civ.A.06-589, 2007 WL 1892473, at *3 (D.N.J. June 29, 2007).  In order to successfully make out a substantive due process claim in the context of local land use regulations, "a plaintiff must establish as a threshold matter that he has a property interest protected by the Fourteenth Amendment's due process clause." Maple, 2004 WL 2579740, at *2 (citing Independent Enters. Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179–80 (3d Cir. 1997)) (internal paranthetical omitted).  Here, the Longs own a piece of land that was effected by Bristol Township's land use regulations, and therefore have established the presence of a property interest entitled to due process protection. See Maple, 2004 WL 2579740, at *2 (citing DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell, 53 F.3d 592, 600 (3d Cir. 1995)); Cherry Hill Towers, LLC v. Twp. of Cherry Hill, 407 F. Supp.2d 648, 654 (D.N.J. 2006) ("As owner of the Cherry Hill Towers property, Plaintiff clearly has a property interest protected by due process.").

The Court must next ascertain whether the identified property interest has, in fact, been aggrieved by the government.  Maple, 2004 WL 2579740, at *2.  In United Artists Theatre Circuit v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003), the Third Circuit defined the standard for determining substantive due process violations in the land use context as government action that rises to the level of "shocking the conscience."  Id. at 400.  While there is no "calibrated yard stick" upon which to measure such conduct, the Supreme Court has recognized that "only the most egregious official conduct" qualifies as conscience shocking.  Kaucher v. Cnty. of Bucks, 455 F.3d

418, 425 (3d Cir. 2006) (internal citation omitted); <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 847

n.8 (1998) (emphasis in original); <u>see also</u> <u>Cherry Hill Towers</u>, 407 F. Supp. 2d at 655.  "What is

clear is that this test is designed to avoid converting federal courts into super zoning tribunals."

<u>Eichenlaub v. Twp. of Indiana</u>, 385 F.3d 274, 285 (3d Cir. 2004).  Indeed, the Third Circuit in <u>United

Artists</u> noted that:

> [E]very appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but "[i]t is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983."  Land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims[.]

<u>United Artists</u>, 316 F.3d at 402 (quoting <u>Creative Env't, Inc. v. Estabrook</u>, 680 F.2d 822, 833 (1st

Cir. 1982)) (further internal citation omitted).

In <u>Eichenlaub</u>, the Court of Appeals provided the lower courts with some guidance on what

qualifies as conscience shocking behavior in the land use context, including: evidence of "corruption

or self-dealing," the hampering of development in order to interfere with otherwise constitutionally-

protected activity, municipal action reflecting "bias against an ethnic group," or evidence indicating

a "virtual taking" of the claimant's property.  <u>Eichenlaub</u>, 385 F.3d at 285–86.  By the same token,

the Third Circuit likewise listed examples of conduct that is *not* sufficiently egregious or outrageous,

such as: applying certain regulations to one parcel of property but not to others, making unannounced

or unnecessary inspections of the property, delaying permits and approvals, improperly increasing

tax assessments, or "malign[ing] or muzzl[ing]" claimants.  <u>Id.</u> at 286.  While these lists are not

exhaustive, the Third Circuit has noted that allowing only the most outrageous conduct to qualify

as conscious shocking prevents federal courts from "being cast in the role of a 'zoning board of

appeals.'" <u>United Artists</u>, 316 F.3d at 402 (quoting <u>Estabrook</u>, 680 F.2d at 833).

Here, the Longs contend that Bristol Township's conduct shocks the conscience because no reasonable jury could conclude that the ZHB's actions served any rational land use purpose.  (Pls.' Resp. Opp'n 16.)   More specifically, Plaintiffs allege that there is no evidence in the record indicating that the Longs' proposed use of their property as a mini-storage warehouse was inconsistent with the aim of the Bristol Township Beautification Project, or that the zone change directly impacted their tract of land.  (<u>Id.</u>) Plaintiffs further contend that the Board's reliance on their as-of-yet failure to begin construction on the property is improper (<u>id.</u>), and that the ZHB's actions overall were motivated by "bias, bad faith, and improper motives, such as political and/or personal gain."  (Compl. ¶ 49.)

Several factors, however, counsel against a finding that the Township's actions shocked the conscience here.  First, in <u>United Artists</u>, the Third Circuit expressly overruled prior caselaw that allowed for substantive due process violations in the land use context to be based on a mere improper motive or a reason unrelated to the merits of the issue, stating that land use disputes "should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives."  <u>United Artists</u>, 316 F.3d at 400–02; <u>see also</u> <u>Honey Brook Estate v. Honey Brook Twp.</u>, No. Civ.A.09-6910, 2012 WL 2076985, at *14, 15 (E.D. Pa. June 7, 2012); <u>Cherry Hill Towers</u>, 407 F. Supp. 2d at 654.  The Third Circuit has likewise recognized that "a bad faith violation of state law" does not meet the conscience-shocking standard. <u>See</u> <u>Highway Materials, Inc. v. Whitemarsh Twp.</u>, 386 F. App'x 251, 257 (3d Cir. 2010); <u>see also</u> <u>Honey Brook</u>, 2012 WL 2076985 at *14 (recognizing and relying on the holding of <u>Highway Materials</u>).  As such, Plaintiffs' assertions that Bristol Township's actions here violated their

substantive due process rights because they were based on "bad faith" and "improper motives" do not rise to the heightened level of egregiousness necessary to establish a constitutional violation. Moreover, to the extent that Plaintiffs assert that the Township's actions were motivated by "political and/or personal gain," there is no evidence in the record to support such a finding.  It is well-established law that "[i]t is not enough simply to give [ ] state law claims constitutionals labels . . . in order to raise a substantial federal question[.]"  Wessie Corp., 2007 WL 1892473, at *6 (citing Creative Env't, 680 F.2d at 833).

The Court next considers Plaintiffs' allegation that the ZHB's actions did not serve a rational purpose because Plaintiffs' proposed use of the property as a mini-storage warehouse was consistent with the Beautification Project and the zone change did not directly impact their tract of land.  On their part, Defendants contend that the Township's actions and decision to deny the variance extension were based on the fact that circumstances had significantly changed as a result of the Beautification Project, as well as Plaintiffs' chronic failure to timely adhere to the requirements related to the granting of their variance.  (Defs.' Summ J. Mem. 11; ZHB Decision at 3; Marczak Dep. 17:13–19; 21:3–5.)

Glenn Kucher—the zoning officer who notified the Longs of the expiration of their variance and that testified at the December 2006 hearing—stated in his deposition that certain Township officials expressed concern that the Longs' plan to build a warehouse did not fit with the character of the Beautification Project. (Kucher Dep. 59:5–24.) Instead of supporting a finding that the Board acted arbitrarily, this testimony actually indicates that the ZHB's denial of the variance extension *was* rationally related to the issue of land use planning.

Moreover, even if the conduct at issue here did not serve a rational purpose, the Longs'

claims would nonetheless fail because the Township's actions simply do not rise to the level of conduct that is "*so egregious*, *so outrageous*, that it may fairly be said to shock the contemporary conscience."  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998) (emphasis in original). Numerous courts have declined to find a violation of substantive due process under analogous circumstances.  See Blain v. Twp. of Radnor, 167 F. App'x 330, 333–34 (3d Cir. 2006); Maple, 2004 WL 2579740 at *2–3; Perano v. Twp. of Tilden, No. Civ.A.09-00754, 2010 WL 1462367, at *7–8 (E.D. Pa. Apr. 12, 2010); Honeybrook, 2012 WL 2076985, at *13–17; Hankin Fam. P'ship v. Upper Merion Twp., No. Civ.A.01-1622, 2012 WL 43610, at *18–21 (E.D. Pa. Jan. 6, 2012); Cherry Hill Towers, 407 F. Supp. 2d at 654–57; Wessie Corp., 2007 WL 1892473, at *3–6.  None of the actions of Bristol Township in this case are analogous to the types of conscience-shocking behavior identified by the Third Circuit in Eichenlaub, 385 F.3d at 285–86.  In fact, Plaintiffs' contentions that the Township treated them differently from other developers actually fits within the type of behavior recognized by the Third Circuit in Eichenlaub as *not* sufficiently egregious or outrageous for due process purposes.  Id. at 286 (recognizing that a municipality's conduct in applying requirements to some parcels of land but not others does not qualify as "conscious-shocking" behavior).  Finally, to the extent that Plaintiffs base their due process violation on the costs they incurred from the services of Koopman and Mixner,[6] this Court notes that other courts within this Circuit have previously recognized that the incurment of extensive costs does not constitute conscious-shocking behavior. See Cherry Hill Towers, 407 F. Supp. 2d at 655.

---

[6] Although Plaintiffs do not raise this issue in the section of their Response in Opposition discussing their alleged deprivation of substantive due process, there are numerous references in the record to the incurment of legal and engineering fees stemming from the development of the property.

As such, an analysis of the record in this case indicates that Bristol Township's conduct did

not rise to the requisite level of conscience-shocking behavior.  While the ZHB's conduct here could

potentially be categorized as unfair or improper, such behavior is insufficient to support a substantive

due process violation.  See Perano, 2010 WL 1462367, at *8 ("[C]onduct of officials in this case

may have been 'unfair' or 'improper' from plaintiff's perspective, but there is no evidence of the

patently egregious behavior [necessary] to constitute a substantive due process claim.") (internal

citation and alteration of text omitted); Wessie Corp., 2007 WL 1892473, at *6 ("As has been often

stated, the violation of a state statute [or regulation] does not automatically give rise to a violation

of rights secured by the Constitution.") (internal citation and quotation marks omitted).  Rather, the

Longs' assertions here are "precisely the type of land-use disputes that are properly adjudicated in

state court."  Perano, 2010 WL 1462367, at *8.  Plaintiffs have already been given a full and

adequate opportunity to air their land use contentions in the Pennsylvania administrative and state

court systems.  To allow them to do so again here would essentially convert this Court into the

"zoning board of appeals" that the Third Circuit cautioned against in United Artists, 316 F.3d at 402.

Therefore, the Court finds that Defendants are likewise entitled to summary judgment on Plaintiffs'

substantive due process claims.

## 2.    Equal Protection (Count II)

The Equal Protection Clause of the Fourteenth Amendment provides that: "[n]o state . . .

shall deny any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV.[7]

---

[7] In their Complaint, Plaintiffs root their equal protection claim in the Thirteenth
Amendment.  The Thirteenth Amendment, however, makes no reference to equal protection, but
rather provides that: "[n]either slavery nor involuntary servitude, except as a punishment for
crime whereof the party shall have been duly convicted, shall exist within the United States[.]"
U.S. Const. amend. XIII.  Despite being made aware of their error, Plaintiffs make no attempt to

Usually, in order to successfully make out an equal protection violation, a plaintiff must establish that he is a member of a protected class, is similarly situated to members of an unprotected class, and was treated differently from the unprotected class.  See Kline ex rel. Arndt v. Mansfield, 454 F. Supp. 2d 258, 264 (E.D. Pa. 2006) (citing Shuman ex rel. Shertzer v. Penn Manor Sch. Bd., 422 F.3d 141, 151 (3d Cir. 2005)).  In circumstances when a plaintiff does not allege membership in a constitutionally protected class or group, however, a claimant may nonetheless pursue an equal protection claim under a "class-of-one" theory.  Perano, 2010 WL 1462367, at *9 (internal citation omitted).  In order to make out a claim under the class-of-one theory in the land use context, a plaintiff must establish that: (1) the government intentionally treated him differently than similarly situated property owners; and (2) there was no rational basis for the government's difference in treatment.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The government's conduct will only be considered unconstitutional if it was "irrational and wholly arbitrary."  Cherry Hill Towers, 407 F. Supp. 2d at 658 (citing Olech, 528 U.S. at 565)).

The first prong of the analysis requires the plaintiff to "identify similarly situated individuals who were treated differently and provide some factual support for such allegations . . . [and] allege 'occasions or circumstances' of differential treatment."  Perano, 2010 WL 1462367, at *9 (citing Conklin v. Warrington Twp., No. Civ.A.06-2245, 2008 WL 2704629, at *11 (M.D. Pa. July 7, 2008)).  In the land use context, the two entities that are being compared for equal protection purposes must be "'similarly situated in all material respects.'"  Timoney v. Upper Merion Twp., No.

---

correct it in their Response in Opposition, and nonetheless discuss their equal protection claim as though it were rooted in the Fourteenth Amendment clause.  As such, the Court will assume that the Longs meant to base their equal protection claim on the well-known equal protection clause of the *Fourteenth*—rather than Thirteenth—Amendment.

Civ.A.01-1622, 2004 WL 2823227, at *6 (E.D. Pa. Dec. 8, 2004) (quoting <u>Shumway v. United</u>

<u>Parcel Servs.</u>, 118 F.3d 60, 64 (2d Cir. 1997)); <u>Windsor Jewels of Penn., Inc. v. Bristol Twp.</u>, No.

Civ.A.01-553, 2005 WL 331703, at *5 (E.D. Pa. Feb. 10, 2005).

In the instant case, Plaintiffs allege an equal protection violation under the class of one theory

based on the Township's treatment of other similarly situated land developers in Bristol Township

that previously requested variance extensions.  According to Plaintiffs, these other land developers

were granted renewed variances or extensions, even though they had not obtained permits and/or

occupancy certificates for those projects within the six-month period required by the Township's

regulations.  (Pls.' Resp. Opp'n 18.)[8]  In support of this contention, Plaintiffs rely on the Affidavit

of their own attorney, Mr. Koopman, who stated that in his experience it was customary for the ZHB

to extend variances when the land development process was underway and no material changes had

been made to the property in question.  (Pls.' Resp. Opp'n, Ex. F, Affidavit of John Koopman,

Esquire ("Koopman Aff.") ¶¶ 8–10.)  Plaintiffs further rely on a Stipulation that they entered into

with the Township in their litigation before the Court of Common Pleas, in which it was

acknowledged that:

> 27.    Prior to the Township's refusal to grant land development approval for the
> Long project in the spring of 2006, the Township had never applied the six-
> month variance limitation to a project involving land development and the

---

[8] In their Complaint filed before this Court, the basis of Plaintiffs' equal protection claim
is that their neighbors, the Rosenbergs, own property in violation of an existing zoning
ordinance, but were nonetheless permitted to use their property as a commercial enterprise
without obtaining a variance. (Compl. ¶ 54.)  Based on this alleged differential treatment, the
Longs requested the Court to award them equitable relief in the form of an order compelling the
Township to enforce the existing zoning ordinance as applied to the Rosenbergs.  (<u>Id.</u> ¶ 56(4).)
As previously mentioned, however, the Rosenbergs were dismissed as defendants to the instant
action per stipulation dated May 10, 2012.  As such, the Court declines to consider the Longs'
equal protection claims to the extent that they concern the Rosenbergs.

> Township had routinely and regularly granted land development approvals
> for numerous projects involving land development, even though permits for
> those projects had not been obtained within six (6) months from the date of
> the variances.
>
> 28.    Since the spring of 2006, the Township Zoning Hearing Board has routinely
> and regularly in each and every case before it, except the Long case, granted
> renewed variances or variance extensions for projects involving subdivision
> or land development.

(Stipulation ¶¶ 27, 28.)  The Stipulation goes on to list nine land development projects in Bristol

Township that were permitted to proceed forward, despite the fact that the developers had not

obtained renewed variances or extensions within the requisite six months.  (Id. ¶ 33(a–i).)  The

Longs point out that the Court of Common Pleas relied on these stipulated facts when they found that

Bristol Township acted in bad faith, and that the ZHB's actions "appear[ed] [to be] orchestrated to

thwart the progress of th[e] [Longs'] project for reasons unclear."  (Pls.' Resp. Opp'n 18; Common

Pleas Op. 9.)

       In response, Defendants assert that the Longs are not similarly situated to these other

developers "in all material respects," as is required to establish an equal protection violation.  (Defs.'

Summ. J. Mem. 12, 13.)  More specifically, Defendants allege that the Longs did not file their land

development plan until *after* their variance expired, while the other land developers filed their plans

*prior to* the expiration of their variances.  (Id. at 7, 13.)  Thus, according to Defendants, the other

developers' plans were already approved and the land development process was well underway when

they sought an extension, thereby making the granting of their requests more logical under the

circumstances.  (Id.)  Plaintiffs, on the other hand, had not received approval for their plan prior to

the expiration of their variance, nor was their land development process significantly underway at

the time of the filing of their extension request.  (Id.)  Thus, Defendants contend that, while the

Township's treatment of the Longs here may have been *different* from its treatment of other land developers, it was not *unconstitutional*.

On this point, the Court finds that genuine issues of material fact remain as to whether or not the Longs were intentionally treated differently than other similarly situated property developers such that Bristol Township's conduct could be deemed unconstitutional. As an initial matter, Defendants' attempt to distinguish the Longs' project from the other development projects is dubious. Merely because the other developers had already obtained plan approval and were underway with development of their land does not change the fact that, just like the Longs, they nonetheless did not obtain the necessary documentation within the six month time period in order to maintain their variance. Furthermore, there is evidence in the record from which a reasonable juror could conclude that the Longs were likewise underway with the development of their land at the time that their variance expired—notably, their incurment of legal and engineering fees related to the development of their property. (See Mixner Invoice; Koopman Bill.)

Furthermore, material issues of fact remain as to whether or not the second prong of the equal protection analysis has been satisfied under these circumstances—*i.e.*, whether the Township's actions here were "rationally related to a legitimate governmental purpose." Clark v. Jeter, 486 U.S. 456, 461 (1988). On this point, Bristol Township asserts two allegedly rational reasons for denying the Longs' variance extension: (1) that circumstances had changed in the Township as a result of the Beautification Project, and (2) that Plaintiffs' continued delay in obtaining a valid variance implied that they were not actually interested in developing the property. (Pls.' Resp. Opp'n 13; Marczak Dep. 17:13–19, 21:3–5.)

The record indicates that the purpose of the Beautification Project was to revitalize Route 13

22

and to aesthetically enhance and bring commercial business to Bristol Township.  (Kucher Dep. 43:21–24.)  As a result of the Project, this area of the Township was re-zoned for "mixed use."  (Id. at 44:19–21.)  The Township sought to achieve its goals for the Project in numerous ways, including by revamping the local train station, planting aesthetic landscaping, building pedestrian-friendly walkways along Route 13, and recruiting retail shops and restaurants to the area.  (Id. 44:5–10, 48:12–17.)  In his deposition, Kucher testified that "self-storage was not something that . . . had [been] outlined as an appropriate use" under the Project, and that certain Township officials expressed hesitation about the Longs' storage warehouse adhering to the character of the newly revitalized and aesthetically enhanced area that the Township sought to develop.  (Id. at 48:14–17; 59:18–22.)  Preserving and promoting a community's aesthetic quality and character has previously been recognized as a legitimate government purpose under the equal protection clause.  See Berman v. Parker, 348 U.S. 26, 33 (1954) ("It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled."); Rogin v. Bensalem Twp., 616 F.2d 680, 688 (3d Cir. 1980); Roosevelt Blvd. Corp. t/a Pinups v. City of Phila., No. Civ.A.02-1391, 2003 WL 57903, at *9 (E.D. Pa. Jan. 06, 2002); Interstate Outdoor Adver. v. Zoning Bd. of Twp. of Mt. Laurel, No. Civ.A.09-1376, 2011 WL 4386577, at *7 (D.N.J. Sept. 19, 2011).  Thus, it is possible to find that the Township's denial of the Longs' variance extension was rationally related to the legitimate government purpose of creating and promoting the aesthetics and character of the local community.

On the other hand, the record also indicates that the Longs' particular parcel of land was not directly affected by the Beautification Project.  Specifically, Kucher testified that the new mixed use zoning classification did not apply to the Longs' property, and that the aesthetic enhancements would

23

not take place along the part of Route 13 buttressing the Longs' parcel of land.  (Kucher Dep. 49:10–16.)  The record further reveals that the Beautification Project actually was approved and received government funding *before* the Township granted their original variance in March of 2005. (Court of Common Pleas Op. 9; Stipulation ¶ 22.)  This evidence shows that the Township was cognizant of the ramifications of the Beautification Project when it initially approved of the Longs' decision to build a warehouse, and calls into question why the Township later objected to the Longs' intended use of their property.  In fact, it is possible to find that the Township's actions here hint toward the type of "irrational" and "arbitrary" conduct prohibited by the Equal Protection Clause. See Cherry Hill Towers, 407 F. Supp. 2d at 658.  Thus, based on this evidence, a reasonable juror could also find that the Township's denial of the variance extension based on the Beautification Project was not rational. Given these genuine issues of material fact, summary judgment on this point is impermissible.

As to the Township's contention that its actions were steered by the Longs' continued delay in obtaining a valid variance, the Court cannot conclude that a reasonable juror would be unable return a jury verdict in the Longs' favor on this point.  Defendants assert that Plaintiffs' repeated tardiness and failure to adhere to set timing requirements indicated to Township officials that they were not really interested in developing their property. (Defs.' Summ. J. Mem. 5, 13; Marczak Dep. 17:13–19, 21:3–5.)  As an initial matter, the Court notes that the mere fact that the Longs applied for an extension of their variance in the first instance indicates that they remained interested in developing their parcel of land.  There is also evidence in the record indicating that the Longs' attorney and engineer continued to work on the advancement of the property during this time.  (See Mixner Invoice; Koopman Bill.)  These facts call into question whether the Township's denial based

24

on the Longs' conduct was rational and legitimate.  Such an inquiry is best left to the discretion of a jury.

Therefore, based on the above, summary judgment on Plaintiffs' equal protection claim based on the government's treatment of other similarly situated land developers in Bristol Township is impermissible.  As such, Defendants' request for summary judgment on this point is denied.

### 3.    Taking of Property (Count III)

Plaintiffs further cursorily allege that the Township's actions in this case resulted in an unlawful de facto taking of their property because they "were deprived of any use of the Property while they awaited zoning approval which was withheld in bad faith."  (Pls.' Resp. Opp'n 19.)[9]

The Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that: "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  In Williamson Co. Regional Planning Communications v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985), the Supreme Court of the United States held that a takings claim is not ripe for adjudication if the claimant has not sought compensation through the procedures a state has provided for doing so.  Id. at 195.  The Court based its holding on the fact that the "Fifth Amendment

---

[9] The basis of Plaintiffs' takings claim is unclear, as they make no reference to either the Fifth Amendment or Pennsylvania Code provisions or caselaw. In Count III of the Complaint, Plaintiffs make no reference to the Fifth Amendment or § 1983, whereas their other constitutional claims in Counts I and II directly reference the specific section of the Constitution upon which they are based.  In the section of the Complaint entitled "Jurisdiction and Venue," however, it is stated that: "the Longs bring this action under the Fifth . . . Amendment[ ] to the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C.A. § 1983." (Compl. ¶ 3.)  Plaintiffs make no attempt to clarify their position in their Response in Opposition. In fact, Plaintiffs dedicate a mere two sentences to their takings claim in their Response in Opposition. (See id.) Moreover, Plaintiffs likewise fail to cite to any Pennsylvania Code provisions or caselaw in their Response in Opposition.  Nonetheless, the Court will consider Plaintiffs' claims under both the federal constitution and applicable state law.

does not proscribe the taking of property; it proscribes the taking of property *without just compensation*." Id. at 194 (emphasis added).

In Pennsylvania, the Commonwealth's Eminent Domain Code provides procedures according to which landowners may seek just compensation for alleged takings of their property in 26 Pa. C.S. §§ 308, 502, and 709. Perano v. Twp. of Tilden, No. Civ.A.09-00754, 2010 WL 1462367, at *12 (E.D. Pa. Apr. 12, 2010) (citing Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008)). In regard to alleged de facto takings of property, a property owner may bring an action for inverse condemnation[10] to obtain just compensation under the Code. "A de facto taking occurs when 'an entity clothed with the power of eminent domain has, by even a non-appropriative act or activity, substantially deprived an owner of the beneficial use and enjoyment of his property.'" Munoz v. City of Phila., No. Civ.A.05-5318, 2006 WL 328346, at *5 (E.D. Pa. Feb. 10, 2006) (citing Genter v. Blair Cnty. Convention & Sports Facilities Auth., 805 A.2d 51, 55 (Pa. Commonw. Ct. 2002)). The Third Circuit has recognized that these Code provisions provide "adequate process for plaintiffs to obtain just compensation. . . . Where there is a procedure for seeking just compensation, 'the property owner cannot claim a violation of the [Takings] Clause until [he] has used the procedure and been denied just compensation.'" Chainey, 523 F.3d at 223 (citing Williamson, 473 U.S. at 195); see also Cowell v. Palmer Twp., 263 F.3d 286, 290 (3d Cir. 2001); Brubaker v. E. Hempfield Twp., 234 F. App'x 32, 36 (3d Cir. 2007); ATE Kays Co. v. Pa. Convention Ctr. Auth., No.

---

[10] "In a normal takings case, the taking occurs when the government acts to condemn property in the exercise of its power to eminent domain, while the doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings." ATE Kays Co. v. Pa. Convention Ctr. Auth., No. Civ.A.00-3693, 2000 WL 1763669, at *2 (E.D. Pa. Nov. 21, 2000) (citing Peduto v. City of N. Wildwood, 878 F.2d 725, 728 n. 4 (3d Cir. 1989); First Eng. Evangelical Church v. L.A. Co., 482 U.S. 304, 316 (1987)).

Civ.A.00-3693, 2000 WL 1763669, at *2 (E.D. Pa. Nov. 21, 2000).

As applied to the instant case, the Longs must first have suffered a deprivation of their constitutional rights and then utilized the state procedures available to them to remedy the deprivation *before* filing their takings claim.  See Atuahene v. City of Phila., No. Civ.A.99-1359, 1999 WL 994004, at *3 (E.D. Pa. Oct. 29, 1999) (finding plaintiff's § 1983 claim premature because he did not first utilize the state procedures available to him in Pennsylvania).  The record indicates that the Longs have not attempted to seek compensation under the Commonwealth's Eminent Domain Code to remedy the alleged taking of their property.  As such, their takings claim is not ripe and summary judgment on this point is granted in favor of the Defendants.

## B.   Claims Against Officers In Their Individual Capacities

When suing an officer named as a defendant in a legal action in his individual capacity pursuant to 42 U.S.C. § 1983, plaintiffs essentially seek to hold the officer personally liable for his or her conduct.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  Here, Plaintiffs bring suit against ten named Township officials in their individual capacity.[11]   Two of these officials, Kucher and Margulies, are zoning officers. Three officials—Monahan, Tarlini, and Davis[12]—are members of the Bristol

_____

[11] Plaintiffs likewise bring suit against these individuals for actions taken in their official capacity. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Hafer, 502 U.S. at 25 (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985); Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)) (internal quotation marks omitted).  Suits against government officers in their official capacity therefore should be treated as suits against the government entity itself. Hafer, 502 U.S. at 25 (citing Graham, 473 U.S. at 166).  To the extent that the officials in this case are being sued in their official capacities, the Court will treat such actions as suits against the Township itself, and considers these claims below in Section C, *supra*, discussing the Township's potential municipal liability under these circumstances.

[12] In their Complaint, Plaintiffs incorrectly identify Defendant Monahan as "John Monaghan" and Defendant Tarlini as "Linda Parlini."

Township Council.[13]   The remaining five officers are members of the Zoning Hearing Board:

Burgess, Marczak, Horvath,[14] Champey, and Gushue.[15]  In their Motion for Summary Judgment,

Defendants generally assert that these individuals are immune from liability based on the doctrine

of qualified immunity.  A closer review of the record and relevant law, however, indicates that, based

on their positions and job duties, several of these officials could qualify for more "protective" forms

of immunity—notably, judicial and legislative immunity.  As such, the Court will consider whether

any of the "more protective" forms of absolute immunity apply to any of the individually named

defendants before considering whether the qualified immunity doctrine is applicable here.

### 1.    Judicial Immunity

The Court first addresses the claims asserted against the five members of the ZHB.  "'It is

a well-settled principle of law that judges are generally immune from a suit for money damages.'"

Ryan v. Lower Merion Twp., 205 F. Supp. 2d 434, 439 (E.D. Pa. 2002) (quoting Figueroa v.

Blackburn, 208 F.3d 435, 440 (3d Cir. 2000); Mireles v. Waco, 502 U.S. 9 (1991) (per curiam))

(further citation omitted).  The Third Circuit has recognized that members of zoning boards are

charged with performing "quasi-judicial functions," and are therefore entitled to judicial immunity

---

[13] In their Complaint, Plaintiffs mistakenly identify these individuals as members of the
Township's "Board of Supervisors."  (See Compl. ¶¶ 15–17.)  The actual governing body of
Bristol Township to which these Defendants belong, however, is the Township Council. (See
Defs.' Summ. J. Mot., Exs. U, V, W.)

[14] Defendant Horvath is since deceased.  In their Response in Opposition, Plaintiffs
therefore withdraw their claims asserted against her.  (See Resp. Opp'n 20.)  As such, summary
judgment is denied as moot on all claims asserted Defendant Horvath.

[15] Plaintiffs incorrectly identify Defendant Champey as "Joseph Campey." Furthermore,
Plaintiffs once again mistakenly identify these five individuals as members of the Township's
"Board of Supervisors" in their Complaint.  (See Compl. ¶¶ 10–14.) These individuals, however,
are members of the Zoning Hearing Board.  (See Defs.' Summ. J. Mot., Exs. B, C, M, N, O.)

for their actions that are integrally related to the judicial process.  See Omnipoint Corp. v. Zoning Hr'g Bd. of Pine Grove, 181 F.3d 403, 409 (3d Cir. 1999) (citing Urbano v. Meneses, 431 A.2d 308, 311 (Pa. Super. 1981)).  In Ryan, Chief Judge Joyner addressed a remarkably similar factual scenario that occurred in a township nearby to the one at hand.  In finding that the ZHB members in that case were entitled to judicial immunity for their actions, the court noted that:

> Defendants Ryan and Morris were sitting as members of the Zoning Hearing Board ("ZHB") to hear Plaintiff's appeal from a zoning decision made by Duncan, a Zoning Officer.  Plaintiff was represented by counsel at the ZHB hearing.  Plaintiff put on a case-in-chief and had the opportunity to cross-examine his opponents.  The ZHB took the sworn testimony of witnesses and ruled on objections from counsel.  A review of the transcript from the hearing demonstrates it was judicial in nature. Further, the ZHB issued a written opinion outlining its decision and the decision was appealable to the Court of Common Pleas for Montgomery County, Pennsylvania. Because Defendants Ryan and Morris were performing a quasi-judicial role as members of the ZHB hearing an appeal of a zoning decision, they will be granted judicial immunity and all of Plaintiff's claims against them in their individual capacities are dismissed with prejudice.

Ryan, 205 F. Supp. 2d at 439 (internal footnotes omitted).  The actions of the ZHB officers in Ryan are almost precisely the same as the actions of the five ZHB members at issue here.  As such, this Court finds the language of Ryan directly applicable to this dispute.  Rather than rehash what has already been properly stated by the Chief Judge of this Court, this Court finds that, as members of the ZHB, Defendants Burgess, Marczak, Champey, and Gushue are entitled to judicial immunity for their actions here.  Summary judgment is therefore granted on all claims asserted against them in their individual capacities.

## 2.    Legislative Immunity

The Court next considers whether the members of the Township Council or zoning officers are entitled to absolute legislative immunity for their actions in this case.

In <u>Tenney v. Brandhove</u>, 341 U.S. 361 (1951), the Supreme Court held that individual legislators acting in their official legislative capacity are absolutely immune from suit for damages under § 1983.  The Court subsequently extended the reach of this immunity to regional legislators in <u>Lake County Estate, Inc. v. Tahoe Regional Planning Agency</u>, 440 U.S. 391 (1979).  In <u>Aitchison v. Raffiani,</u> 708 F.2d 96 (3d Cir. 1983), our Court of Appeals further expanded the breadth of legislative immunity to include local legislators.  Local legislators, however, are only entitled to immunity for actions taken in a traditional legislative capacity, and the Third Circuit has therefore instructed courts to focus on whether the "mode" in which such individuals operate is more "legislative" or "administrative" in nature.  <u>See Donivan v. Dallastown Borough</u>, 835 F.2d 486, 488 (3d Cir. 1988); <u>Ryan v. Burlington Cnty., N.J.</u>, 889 F.2d 1286, 1290 (3d Cir. 1989); <u>Acierno v. Cloutier</u>, 40 F.3d 597, 610 (3d Cir. 1994).  In <u>Donivan</u>, the Third Circuit differentiated between the two types of modes, stating that actions which apply generally to the community at large are legislative matters, while actions directed at one or a few individuals are usually more administrative in nature.  <u>Donivan</u>, 835 F.2d at 488 (internal citations omitted).  The circuit court further clarified that "legislative powers require enactment of an ordinance; if an act is accomplished by means other than an ordinance, it is not an exercise of legislative activity."  <u>Id.</u> at 489.

According to the record, the Bristol Township Council is a local governmental body responsible for various legislative and administrative duties.  Specifically, Council members address all citizen complaints and concerns, legal and union issues, and land development procedures occurring within the Township.  (<u>See</u> Tarlini Dep., 14:22–24, 15:1–18; Monahan Dep. 8:18–24, 9:12–22.)  Council members also review Township bills and organize local community projects, such as the Bristol Township Beautification Project.  (Davis Dep. 11:10–24.)  Moreover, Council

members regularly participate in local public meetings and vote on specific issues affecting the community. (Tarlini Dep. 17:18–24; Monahan Dep. 9:2–5; Kucher Dep. 12:12–24.) Most relevant to this case is the fact that the Township Council is the government entity charged with approving or disapproving land development plans.

In Epstein v. Township of Whitehall, 693 F. Supp. 309 (E.D. Pa. 1988), another court in this District held that the actions of local legislators in voting on and disapproving a development plan did not constitute legislative activity to which immunity attaches. Id. at 315. The court based its finding on the fact that the legislators "were not voting upon passage, amendment or recission of an ordinance which generally applied to all [ ] Township residents or those wishing to develop land within the Township; [but] rather . . . was purportedly taking an ordinance, already enacted, and applying it to but a single plan for development[.]" Id. Based on this, the court found that the officials' actions were administrative in nature. Id.

Here, Plaintiffs' claims against the Township Council members are particularly premised on their actions related to the disapproval of the Longs' land development plan. In ultimately deciding not to approve their development plan, the Council members did not vote on an ordinance that generally affected all Bristol Township residents or those wishing to develop land within the Township as a whole, but rather solely focused and acted upon the Longs' particular land development plan application. Under Epstein, such conduct is more administrative than legislative in nature. Defendants Davis, Monahan, and Tarlini are therefore not entitled to legislative immunity for their actions here.

As to the zoning officers in Bristol Township, the record indicates that these officials are responsible for processing variance applications and fees, creating notices of land developments,

31

placing advertisements in local newspapers, and forwarding applications to the ZHB.  (Kucher Dep. 35:10–24.)  While zoning officers attend hearings on the variance applications before the ZHB, they do not make recommendations to the Board or vote on the applications.  (Id. 35:22–24; 37:8–12; 39:12–14.)  Based on these duties, the actions of zoning officers in Bristol Township appear to be more administrative than legislative in nature.  As such, Defendants Margulies and Kucher are likewise unable to shield themselves from liability based on the doctrine of absolute legislative immunity.

### 3.    Qualified Immunity

The Court next considers whether the Township Council members and zoning officers can take advantage of the less protective shield of qualified immunity.

Qualified immunity exists when a reasonable officer could have believed his conduct was lawful in light of clearly established law and the information he possessed.  Id. Moreover, the plaintiff's subjective beliefs are irrelevant in determining whether the qualified immunity doctrine applies.  See Anderson v. Creighton, 483 U.S. 635, 636 (1987); Green v. City of Patterson, 971 F. Supp. 891, 901 (D.N.J. 1997).  The doctrine provides sufficient room for mistakes in the officers' judgment, and serves to protect "all but the plainly incompetent or those who knowingly violate the law."  Green, 971 F. Supp. at 901 (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995)) (further citations omitted).

In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court established the standard for invoking a qualified immunity defense, stating that: "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." Id. at 818 (internal citations omitted).  In Saucier v. Katz, 533 U.S. 194 (2001), the Court refined this standard by formulating a two-pronged inquiry into the official's conduct: (1) whether, taken in the light most favorable to the plaintiff, the alleged facts indicate the deprivation of an actual constitutional right; and (2) if so, whether the right was clearly established such that a reasonable officer could have believed that the particular conduct at issue was lawful.  See id. at 201; see also Holmes v. Cnty. of Del., No. Civ.A.04-4794, 2007 WL 954122, at *4 (E.D. Pa. Mar. 28, 2007); Pagan v. Ogden, No. Civ.A.09-00002, 2010 WL 3058132, at *6 (E.D. Pa. July 30, 2010); Bergdoll v. City of York, No. Civ.A.1:08-01879, 2009 WL 25093, at *7–8 (M.D. Pa. Jan. 5, 2009). In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court held that the sequence of the Saucier inquiry is not mandatory and that district courts should exercise their "sound discretion" in determining which prong to address first.  Id. at 236; see also Pagan, 2010 WL 3058132, at *6; Verdier v. Borough, 796 F. Supp. 2d 606, 630 (E.D. Pa. 2011).

The first prong of Saucier instructs the Court to consider whether Plaintiffs could have been deprived of an actual constitutional right under these circumstances.  Saucier, 533 U.S. at 201.  As discussed above, a reasonable jury could find that the Longs' equal protection rights were violated based upon the Township's treatment of other similarly situated land developers that were previously granted variance extensions and renewals.  As such, the first prong of Saucier is satisfied under these circumstances.

The second prong of Saucier requires the Court to consider whether the alleged constitutional rights were clearly established such that a reasonable officer could have believed that the particular conduct at issue was lawful.  Id.  The Fourteenth Amendment right to equal protection of the laws is clearly established.  See Plyler v. Doe, 457 U.S. 202, 216 (1982).  Thus, the only remaining

inquiry is whether the officers could have believed that their conduct was lawful in light of this clearly established constitutional right.

The Court first considers the actions of the two zoning officers in this case. As to Defendant Margulies, Plaintiffs have not pointed to any specific actions taken by her, let alone any conduct on her part that could be considered anything but lawful. Nothing in the Complaint identifies any acts undertaken by Margulies in her capacity as a zoning officer of Bristol Township. Even after discovery, the record is still devoid of any reference at all to her actions in this case. In their Response in Opposition, Plaintiffs make no attempt to explain how Margulies could be held personally liable here, and instead merely conclusively state that whether individual officers here "had a reasonable belief that their conduct is lawful is a genuine issue of material fact to be decided at trial by the fact finder." (Pls.' Resp. Opp'n 19.) The Court disagrees. The record here reveals no genuine issue of material fact on Margulies's lack of personal liability. As such, summary judgment is granted on all claims asserted against Defendant Margulies for actions taken in her individual capacity.

Plaintiffs are, however, more successful in their allegations against Defendant Kucher. Defendants point out that the duties of Kucher's position as a zoning officer of Bristol Township did not include voting on the Longs' variance extension request, and therefore assert that he cannot be held responsible for the ZHB's ultimate decision to deny their application. (Defs.' Summ. J. Mot. 16.) While it is true that Kucher did not actually make the decision to deny the variance extension, the record reflects that he was directly involved in the process leading up to the ZHB's denial of the request. Specifically, Kucher testified at the December 2006 hearing before the ZHB that the Longs' variance request was no longer appropriate given the changes in the local area. (Pls.' Resp. Opp'n

34

19.)  Discovery revealed, however, that the Longs' particular parcel of land was not actually directly affected by the Beautification Project.  (<u>See</u> Kucher Dep. 49:10–16.)  Furthermore, in his deposition taken during discovery, Kucher stated that zoning officers in Bristol Township do not make recommendations to the ZHB on particular variance extension or renewal applications.  (<u>See</u> <u>id.</u> 37:8–12. )  This begs the question of why Kucher testified against the granting of the Longs' application at the December 2006 hearing in the first place if such conduct fell outside his job duties as a zoning officer.  Such inquiries constitute a genuine issue of material fact better left to the discretion of a jury.  As such, Defendant Kucher is unable to envelop himself in the cloak of qualified immunity under these circumstances.

The Court next considers whether the Township Council members are entitled to qualified immunity.  In Bristol Township, the Township Council votes on land development plans, while the ZHB—a completely separate entity—makes decisions related to variance extensions and renewals. (Kucher Dep. 34:6–24, 35:1–24.)  Although the approval of a land development plan is separate and distinct from the granting of a variance extension, the two are related because the Township Council cannot approve a given land development plan unless the developer possesses a valid variance for the property.  (<u>Id.</u> at 34:23–24; 35:1–3.)  This procedure indicates that the Township Council members in the instant case could not have believed that their conduct was anything but lawful.  At the time that the Longs filed their land development plan with the Council in January of 2006, their variance had already expired.  The Council was therefore precluded from considering their plan any further until they obtained a valid variance. The ZHB denied the Longs' variance extension application in December of 2006.  At this point, the land development plan became stagnant because the Longs did not possess a valid variance for their parcel of land, and, according to the procedure

35

in Bristol Township, the Council could take no further action on the plan.  Given that the Township

Council was merely following standard procedure, the Court finds nothing unlawful about this

conduct.  In fact, the Court recognizes that when the Court of Common Pleas ultimately overturned

the ZHB's denial of the variance extension, the Township Council approved Plaintiffs' land

development plan upon receipt of a valid variance.  This fact further supports a finding that the

Council members could have believed that their conduct was lawful under these circumstances.  As

such, Defendants Davis, Monahan, and Tarlini are shielded from personal liability here under the

doctrine of qualified immunity.  Accordingly, summary judgment is granted on all claims asserted

against them in their individual capacities.

### C.    Township Liability[16]

In the seminal case of <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), the

Supreme Court held that § 1983 applies to municipalities and other local government units.  <u>Id.</u> at

690.   To impose § 1983 liability on such a governing body, a plaintiff must show that the

municipality engaged in some "action pursuant to [an] official municipal policy . . . [that] caused a

constitutional tort."  <u>Id.</u> at 691.  However, "it is not enough for a §1983 plaintiff merely to identify

conduct properly attributable to the municipality."  <u>Bd. of the Cnty. Comm'rs of Bryan Cnty. v.</u>

<u>Brown</u>, 520 U.S. 397, 404 (1997).  Rather, the plaintiff must demonstrate a direct causal link

between the municipal action and the deprivation of federal rights.  <u>Id.</u>; <u>see also</u> <u>Bielevicz v.</u>

<u>Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990) (plaintiff carries burden of demonstrating a "plausible

---

[16] As explained above in Footnote 11, *infra*, the Longs also allege claims against ten individuals based on their actions taken in their official capacity as Township officers.  Because suits against government officers in their official capacity are treated as suits against the government entity itself, <u>see</u> Hafer v. Melo, 502 U.S. 21, 25 (1991), the Court considers these allegations in conjunction with its analysis of the Township's potential liability here.

nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation challenged) (internal citation and quotations omitted).

After <u>Monell</u>, the Supreme Court has recognized several ways in which plaintiffs can establish the existence of a policy or custom on the part of a municipality.  First and foremost, the Supreme Court has provided that actions taken by a municipal legislative body can constitute an official policy to which liability could attach.  In <u>Pembaur v. City of Canton</u>, 475 U.S. 469 (1986), the Court stated that: "No one has ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy."  <u>Id.</u> at 480.  As discussed above, the Township Council is an entity of Bristol Township imbued with various legislative and administrative duties, including the approval or disapproval of filed land development plans.  Accordingly, the Township Council's actions here are sufficient to establish the presence of a policy or custom on the part of Bristol Township.

An official policy can likewise be established when government agencies or boards take actions in accordance with the authority delegated to them by the municipality itself.  Specifically, a municipality can be held responsible under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" inflicts a constitutional injury.  <u>Monell</u>, 436 U.S. at 694.  In <u>Monell</u>, for example, the Supreme Court found that the actions of two agencies, the Department of Social Services and the Board of Education, related to city regulations that required pregnant employees to take an unpaid leave of absence, "unquestionably involve[d] official policy."  <u>Id.</u>

In the instant case, the Township can be held responsible under a theory of municipal liability based on actions taken by the ZHB and zoning officers.  The Pennsylvania General Assembly has created and delegated certain duties to municipalities in the land use context.  See 53 P.S. § 10601 ("The governing body of each municipality . . . may enact, amend and repeal zoning ordinances to implement comprehensive plans[.]").  More specifically, the Code provides that municipalities should delegate the duty of enforcement and interpretation of zoning ordinances to a local zone hearing board.  See 53 P.S. § 10901 ("Every municipality which has enacted or enacts a zoning ordinance pursuant to this act or prior enabling laws, shall create a zoning hearing board."); see also In re Leopardi, 532 A.2d 311, 313 (Pa. 1987) (describing the various duties of zone hearing boards in Pennsylvania).  The Code further provides that a municipality may appoint zoning officers to administer local zoning laws.  See 53 P.S. § 10614 ("For the administration of a zoning ordinance, a zoning officer . . . shall be appointed.").  As such, the actions of the Bristol Township ZHB and zoning officers here—exercised pursuant to the authority granted to them by state and local lawmakers—can be said to constitute official policy or custom under Monell such that municipal liability would attach under these circumstances.

Based on the above, the Court finds that summary judgment is not warranted on the basis that Plaintiffs have failed to establish the presence of municipal liability on the part of Bristol Township in this case.  Accordingly, Defendants Motion on this point is denied.

### F.    Punitive Damages

Finally, Plaintiffs seek compensatory and punitive damages for Defendants' alleged violations of their constitutional rights. The Supreme Court has established, however, that municipal governments may not be sued for punitive damages under § 1983.  See City of Newport v. Fact

Concerts, 453 U.S. 247, 271 (1981).  As such, Plaintiffs are precluded from recovering any punitive damages from the Township, and summary judgment is therefore granted in Defendants' favor on this point.

The Supreme Court has concluded, however, that punitive damages may be recovered from individual officers if their actions were "motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  As noted in Russoli v. Salisbury Twp., 126 F. Supp. 2d 821 (E.D. Pa. 2000), "[t]he objective standard of  'callous or reckless indifference' that suffices for an award of punitive damages is not far removed from the standard for denying qualified immunity to the officers—whether a reasonable officer would have known that his conduct violated a clearly established constitutional right.  Therefore any claim . . . that would result in our denying qualified immunity could also be the basis for punitive damages."  Id. at 873.  This Court has already concluded that Defendant Kucher is not entitled to the qualified immunity defense.  As such, Plaintiffs' claims for punitive damages as to Defendant Kucher may proceed forward to trial.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that Defendants' Motion for Summary Judgment is granted in part and denied in part.

An appropriate Order follows.